IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

v.                                    CRIMINAL ACTION NO. 2:07cr196

DIANA RAMIREZ MONREAL,

Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Diana Ramirez Monreal's ("Defendant") Motion to Suppress all

evidence, oral and physical, as well as any and all property seized as a result of any search of the

Defendant or any property where she asserts standing.[1] Defendant also moves to suppress

statements made by her in this or any other case, including the State Court.   Having thoroughly

reviewed the parties' memoranda, and after conducting a hearing to consider the motion on

January 4, 2008, Defendant's Motion to Suppress is **GRANTED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The Brownsville Police Department of Brownsville, Texas along with the Drug

Enforcement Agency ("DEA") allegedly received information that an adult female, "DIANA,"

---

[1]      At the beginning of the hearing counsel for Defendant, Andrew Protogyrou,
stipulated that there was legally sufficient probable cause for Defendant's arrest. (Suppress Hr'g
Tr. 3, Jan. 4, 2008)  In fact, counsel for Defendant stated that the Motion to Suppress was
narrowly limited to the legality of the translated "statement." (Id., 4) Therefore, this opinion is
limited to a discussion of the Defendant's statement and Defendant's Motion to Suppress on
Fourth Amendment grounds is denied.

and a male juvenile would be crossing the gateway port entry into the United States while in possession of heroin with intent to deliver it to a location at the 900 block of E. Elizabeth Street, Brownsville, Texas. Brownsville Police and the DEA responded and organized surveillance of the area. Investigators were advised that the male juvenile would be in possession of the narcotics and would be standing in a parking lot. When investigators approached a male juvenile at the predicted location he apparently yelled out, "Diana" and the Defendant who was walking toward the group reversed her direction. Investigators stopped Defendant. Agents transported Defendant and the male juvenile to Brownsville Police Department, where the male juvenile was found to be in possession of approximately sixty-two (62) grams of heroin. The male juvenile was later detained at the Darrell Hester Juvenile Detention Center in San Benito, Texas.

Defendant had identification documents in her possession as well as other personal documents, including receipts and bank records. The juvenile was identified as 14 year-old Sergio Alberto Mar, Jr. and his cellular phone was confirmed as having been in contact with the DEA cooperating witness. Defendant was transported to Brownsville City Jail when the decision was made to pursue state charges against her. Defendant was later transferred to the Brownsville Police Department's Special Investigations Unit where she was advised of her constitutional rights under *Miranda*. Defendant indicated that she only understood Spanish and had the equivalent of a United States high school diploma. Therefore, Brownsville Police Department Agent Reynaldo Lopez, Jr read Defendant her rights in Spanish and DEA Agent Joe Villarreal was allegedly a witness. Both agents claim to be bilingual.

Defendant made a statement without an attorney present, in Spanish, that allegedly implicated her and the male juvenile in the transportation of heroin. Agent Lopez typed the

2

statement on a computer at the desk where Defendant was interrogated. Consistent with standard

procedure of the Brownsville Police Department, Agent Lopez spoke in Spanish and typed in

English. After printing the statement Agent Lopez read each paragraph to Defendant who was

asked to initial without an attorney present. Defendant was unable to read or initial a statement

written in Spanish. Defendant testified that she requested the statement be shown to her in

Spanish before offering her signature, but Agent Lopez refused. (Hr'g Tr., 91) Defendant denies

that the statement she spoke in Spanish matched what Agent Lopez prepared on June 13, 2007.

Special Agent Edward A. Orgon, Jr., of the Drug Enforcement Administration, filed a

Criminal Complaint in the United States District Court for the Eastern District of Virginia,

Norfolk Division, on August 10, 2007. This Complaint alleged that Defendant did unlawfully,

knowingly and intentionally combine, conspire, confederate and agree together and with other

persons, both known and unknown, to knowingly, intentionally, and willfully distribute and

possess with intent to distribute 100 grams or more of a mixture and substance containing a

detectable amount of heroin, a Schedule I Narcotic Controlled Substance, in violation of Title 21,

United States Code Section(s) 846, 841(a)(1) and 841(b)(1(B)(I). An Indictment was filed

against Defendant on October 24, 2007, in this Court as to Counts 1, 2, and 3-7. On January 4,

2008, a suppression hearing was held.

## II. LEGAL STANDARD

The Fifth Amendment states that " [n]o person...shall be compelled in any criminal case

to be a witness against himself...without due process of the law." U.S. CONST. amend. V. In

determining the validity of a waiver, courts must consider the totality of the circumstances,

including background, experience, and conduct of the police and the defendant. *See Moran v.*

*Burbine*, 475 U.S. 412, 421 (1986); *United States v. Young*, 529 F.2d 193, 194 (4th Cir. 1975). While a "limited ability to understand English may render a waiver of rights defective," this alone is not dispositive. *See United States v. Guay*, 108 F.3d 545, 549 (4th Cir. 1997). Other relevant factors may include: 1) whether the defendant indicated in the affirmative when asked if he or she understood his or her rights;[2] 2) whether the defendant indicated that he or she understood English;[3] 3) the length of defendant's residency within the United States;[4] and 4) defendant's previous encounters with the criminal justice system.[5] *United States v. Morpeno*, 122 F. Supp.2d 679, 681 (E.D. Va. 2000).

### III. DISCUSSION

Defendant does not offer case law to support the assertion that the statement Agent Lopez obtained in Spanish and then translated into English violated the Spanish-speaking Defendant's Fifth Amendment rights. In fact, there is case law from various federal jurisdictions to support the opposite theory. *See e.g., United States v. Valenzuela-Alvarado,* 39 Fed.Appx. 538 (9th Cir. 2002); *see also, United States v. Chaidez,* 906 F.2d 377, 380 (8th Cir.1990)(totality of circumstances supported denial of Spanish-speaking defendant's suppression motion, even though defendant only shown English version of consent form); *see also, United States v. Benitez,* 920

---

[2]    *See Guay,* 108 F.3d at 549.

[3]    *See id.* (court found waiver valid when defendant indicated he understood slowly spoken English); *see also Campaneria v. Reid,* 891 F.2d 1014, 1020 (2d Cir. 1989)

[4]    *See United States v. Sriyuth,* 98 F.3d 739, 750 (3d Cir. 1996)(court found waiver valid where Thai immigrant was read warnings in English but lived in the United States for nine years), *cert. denied,* 519 U.S. 1141 (1997).

[5]    *See, e.g., Correll v. Thompson,* 63 F.3d 1279, 1288 (4th Cir. 1995), *cert. denied,* 516 U.S. 1035 (1996).

F.2d 1080, 1084 (2d Cir.1990) (defendant gave oral statement to agents that was "translated and transcribed" by a Spanish-speaking agent); *see also, United States v, Orozco-Martinez*, No. 05-CR-279, slip op. (E.D. Wisc, Jan. 9, 2006) (recommending denial of motion to suppress statement written in English and translated to defendant in Spanish). However, although there is no clear guideline on this issue in this federal jurisdiction, the Court must conduct a totality of the circumstances analysis in order to determine whether Defendant was afforded all of the protections under the Fifth Amendment.

Defendant is unique from most of the defendants in the prevailing case law. In order to determine whether a proper waiver of a defendant's Fifth Amendment rights exist this Court considers the totality of the circumstances. In the past, courts have considered a defendant's level of understanding of his or her rights, his or her understanding of the English language, the length of time the defendant has resided in the United States, as well as, a defendant's previous encounters with the criminal justice system. *Moreno*, 122 F. Supp.2d at 681. It is undisputed that Defendant has no understanding of the English language. (Hr'g Tr.,12, 31) Furthermore, there is no indication that Defendant spent a significant amount of time in the Unites States. In most of the cases cited above, there was a question of whether a defendant was hiding knowledge of the English language or using the fact that he or she was not a native speaker as an excuse to invalidate a proper waiver. There is no information in the record to support the notion that Defendant had ever been arrested before or was familiar with the *Miranda* warning.

Most importantly, after conducting the suppression hearing, the Court finds the testimony of the agents, who obtained the alleged confession, incredible. The Court concludes that Defendant's alleged statement is not a fair representation of her actual statements during the

interrogation. First, Agent Villarreal was presented as the legal witness to Defendant's confession and the waiver of rights. (Hr'g Tr., 13) However, Defendant testified that Villarreal only came to the room to sign as a witness to both documents. (Hr'g Tr., 87) This is consistent with Villarreal's own testimony that he was with the juvenile, who was kept separate from where Defendant gave her statement, the entire time. (Hr'g Tr., 17) Inconsistently, Villarreal claimed he was present for most of the statement and only stepped out of the room twice. (Hr'g Tr., 21) Agent Lopez testified that Villarreal left the room "numerous times...a bunch of times" and when specifically asked said Villarreal was absent more than twice. (Hr'g Tr., 64) The Court finds that Villarreal was not present in the room where Defendant gave a statement long enough to verify that Lopez accurately transcribed her words.

Second, although Lopez claimed to be "completely bilingual," (Hr'g Tr., 28) the Court finds that Lopez's demeanor on the witness stand totally contradicts any argument that he had the ability to accurately translate Spanish speech to English text. When asked on redirect examination to translate the Spanish Advise of Rights into English, the Court observed that he stumbled and hesitated as he read the translation. (Hr'g Tr., 77) After Lopez's testimony, the Court seriously doubts his ability to have a conversation with Defendant, while simultaneously translating and transcribing the conservation into English.

Third, Lopez admitted throughout his testimony that he paraphrased Defendant's words in order to create the statement that is before the Court. (E.g. Hr'g Tr., 69, 70, 74) This further detracted from the credibility of the statement that was created. Lopez testified that he inserted names and information into the testimony. (Id.) When asked, "It's not what she told you exactly, am I right?" Lopez replied, "Right. I paraphrased it." (Hr'g Tr., 70) The Court is unsure of where

Lopez's paraphrasing begins and where the Defendant's actual testimony ends. On direct examination, Lopez claimed he accurately transcribed everything including Defendant's alleged statement of the amount of heroin. He claims he was personally unaware of the actual amount of drugs recovered until Defendant told him during the interrogation. (Hr'g Tr., 44). However, on cross examination, Lopez said it was possible Villarreal told him the drug weight before the interrogation. (Hr'g Tr., 57) This is a relevant point because the Defendant claims she never knew the amount of drugs recovered and could never have given Lopez the precise amount of drugs.

Finally, there is no record to support the testimony of the agents over the discrepancy claims of the Defendant. Neither agent took handwritten notes (Hr'g Tr., 18) and no recording device was used during her interrogation. However, Lopez testified that the Brownsville Police Department will start recording interrogations because of the instant case (Hr'g Tr., 79).

The Court finds that under totality of the circumstances Defendant's waiver of rights and alleged statement were improper. The record before the Court indicates that Defendant has no knowledge of the English language, has spent little time in the United States, and is virtually ignorant of our criminal justice system. Further, the fact that an agent read a Spanish statement to Defendant does not satisfy the safeguards guaranteed by the Fifth Amendment, for it cannot be disputed that this Defendant had absolutely no idea what she ultimately signed. Upon intelligent review, Defendant disputes what was ultimately translated. In *Valenzuela-Alvarado*, the United States Court of Appeals for the Ninth Circuit held that a Spanish-speaking defendant's confession was not presumptively invalid even though it was written in English *if* the defendant does not challenge its accuracy. *(emphasis added) Valenzuela-Alvarado*, 39 Fed. Appx 538 at 540. In this case, Defendant challenges the accuracy of the ultimate statement and has made a clear and valid

7

assertion of a violation of her constitutional rights.

Admittedly, there is little case law on the issue asserted by Defendant and the case law on this issue has uniformly found that each respective defendant voluntarily waived his or her constitutional rights. However, all of the defendants can be distinguished from Defendant. In each case, the defendant had some understanding of English, had been in the United States long enough to obtain a general understanding of the language or the laws, or simply did not challenge the accuracy of the statement the officers translated from Spanish to English. In the instant case, none of these circumstances are present. This defendant blindly signed a statement that required her to instill all her trust in Agent Lopez. This Court does not find credible evidence from Agent Lopez or Agent Villerreal to indicate Defendant's statement was accurately translated. Therefore, Defendant's Motion to Suppress is **GRANTED**.

## IV. CONCLUSION

For the reasons outlined above, Defendant's Motion to Suppress her statement is **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**

/s/
Raymond A. Jackson
United States District Judge

Norfolk, Virginia
January 2? 2008

8